UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

UNITED STATES OF AMERICA,

        Plaintiff,

     - against -                         Civil No. 11-cv-01530-ELH

THE VALUE OF CERTAIN E-METAL
ACCOUNTS AT E-GOLD, LTD, THAT
ARE TRACEABLE TO CRIMINAL
ACTIVITY; and

THE VALUE OF ALL E-METAL ACCOUNTS
AT E-GOLD, LTD, HELD IN THE NAMES
OF THIRD PARTIES,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MOTION TO APPROVE PAYMENT OF FUNDS CLAIMED BY
ACCOUNT HOLDERS DESIGNATED AS "GROUP F"
AND FOR FINAL ORDER OF FORFEITURE**

The United States of America, by its counsel, hereby moves pursuant to this

Court's Order Appointing Claims Administrator for the release of funds to the account

holders designated as "Group F" in the Value Access Plan (VAP).    In addition, the

Government moves for a final order disposing of all remaining issues, concluding the

service of the Claims Administrator, and forfeiting the Residual Value to the United

States pursuant to 18 U.S.C. § 981(a)(1)(A).

In support of its motion, the Government says the following.

**I.    Background**

On August 19, 2011, the Court issued its Order Appointing Claims Administrator

("the Order").   Among other things, the Order appointed Rust Consulting as the Claims Administrator pursuant to 18 U.S.C. § 1956(b)(4), and directed E-Gold, Ltd (EGL) and the Claims Administrator to cooperate on a plan for sending notice to, and processing the claims of, account holders who appeared to have an interest in the funds designated as either as criminal proceeds ("Criminal Proceeds Value" or "CPV Funds") or funds subject to the Value Access Plan ("VAP Funds"). Order, ¶ ¶ 2,4.   The Order also provided that when any litigation concerning the CPV Funds was concluded, the Court would issue an order directing the Claims Administrator to release whatever funds must be released to successful claimants, and transferring the remaining funds to the United States for forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). Order, ¶ 3.

With respect to the VAP Funds, the Order provided that the Claims Administrator should consolidate all claims into groups, determine whether or not there was any reason why any claim should be disqualified, and present the qualified claims, one group at a time, to the Court so that the Court could approve the release of the funds to the respective account holders.   Order, ¶ ¶  6-7.

Finally, the Order provided that at the conclusion of this process, the duties of the Claims Administrator would be complete, and any funds remaining in the VAP that were not claimed by anyone (the "Residual Value") would be forfeited to the United States pursuant to Section 981(a)(1)(A).   Order, ¶ 7.

The forfeiture of the Residual Value is also discussed, in more detail, in the Letter Agreement between EGL and Gold and Silver Reserve ("GSR") (the "Companies") and the Government that was appended to the Government's Verified Complaint (ECF 1). As set forth at page 9 of the Agreement, the Government must ensure that funds from

2

the Residual Value are set aside for certain purposes before the court enters a final order

of forfeiture pursuant to Section 981(a)(1)(A).   In particular, the Government must "remit

to the Texas Banking Department so much of the Residual Value as may be needed to

satisfy the penalty imposed by it," and remit to the Companies sufficient Residual Value

(i) to reimburse them for reasonable operating expenses incurred in respect of

designing, implementing and completing the VAP and participating in the related

forfeiture proceedings, including, but not limited to, reasonable professional fees and

expenses; and (ii) in the amount of any penalty or fine, including any interest thereon,

outstanding as of the date of this letter or imposed prior to the conclusion of the forfeiture

proceedings described herein". (ECF 1 at 56).

On December 14, 2012, the Court issued an Order releasing $12,287.20 of the

CPV Funds to 22 claimants, and forfeiting the balance of the CPV Funds to the United

States.   (ECF 85)   Thereafter, as set forth in various Status Reports that have been

filed with the Court from time to time, the Claims Administrator and EGL developed a

plan for notifying and processing the claims of account holders with a potential interest in

the VAP Funds.

On October 18, 2013, the court issued an order approving the payment of

$11,055,846.85 to the account holders designated as Group A.   (ECF 108)

On December 19, 2013, the court issued an order approving the Government's

plan for resolving all remaining claims.   (ECF 111)   The order directed the Government

to submit a motion for the approval of the claims in Groups B through E by December 27,

2013; provided that any claims received, reviewed and accepted by the Claims

Administrator between November 22 and December 27, 2013 would be designated as

3

the Group F claims; and provided that no further claims would be accepted after December 27.

On December 23, 2013, the court issued an order approving the payment of $8,891,467.06 to the account holders designated as Groups B through E.   (ECF 115)

In addition, on December 19, 2013, the court issued an order approving the release of $2,962,873.21 to reimburse GSR for the fine that GSR paid to OFAC in October 2011.   (ECF 113).

## II.   Summary of the Motion for Final Order of Forfeiture

In this motion, the Government seeks the approval of the court to disburse the funds claimed by the claimants in Group F – the last remaining group of claimants entitled to disbursements from the VAP.

In addition, the Government seeks to comply with the terms of the Letter Agreement regarding the use of the Residual Value to remit the funds needed to satisfy the penalty imposed by the Texas Banking Department, and to reimburse EGL for the expenses to which it is entitled under the Letter Agreement.   Because the parties have not yet agreed on the amount needed to satisfy the latter obligation, the Government seeks to set aside such funds as may, in the worst case, be necessary to satisfy it, so that the court may dispose of this case in all other respects without further delay.

This motion also addresses several "housekeeping" matters that are necessary to tie up certain "loose ends" regarding the VAP.   The most important of these concerns funds in the VAP that the Government is currently unable to release to the potential claimants because they reside in countries covered by an OFAC order barring the transfer of funds from the United States to those countries.

4

Finally, the Government moves that all remaining funds in the Residual Value be forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## III.   Disbursement of Funds to Group F

### A. Procedure Used to Qualify Account Holders

The Claims Administrator has advised the Government that it followed the same procedure for qualifying the Group F claims as it used to qualify the account holders in Groups A through E.   *See* Government's Motion to Approve Payment to Group A (ECF 107).

All of the account holders completed the VAP Owner and User CIP process (Customer Identification Program) with EGL, which verified the account holders' identities and the validity of the submitted documentation.   Having completed the Customer Identification Program, the account holders were given an access code to use on the Rust website to complete the E-Gold Claims Process.   This consisted of logging in, agreeing to the e-metal balance and value, specifying a payee, and providing payment information.

The Claims Administrator then submitted each of the Group F claims to an internal validation process.   This consisted of comparing the information submitted with the claim on the Rust website with data submitted by EGL with respect to each account. The purpose of this validation process was to ensure that the payee and address information that was approved by EGL was consistent with the information that was submitted to the Claims Administrator.   The Claims Administrator then ran the Group F claims through a series of 37 different watch lists supported by the LexisNexis Bridger program.   These included the OFAC Specially Designated Nationals list; the Terrorist

Exclusion List; FBI lists; lists from a number of countries such as Hong Kong, Australia, the UK, Japan, Singapore, Canada, and China; and banking and securities lists. After the watch list step was completed, a list of the accounts belonging to US residents was sent to the Treasury Offset Program for review.   There were no matches to the Treasury Offset in this group.

## B. Releasing Funds to the Group F account holders

The Claims Administrator found that 295 of the Group F claims, valued at $295,642.60, are qualified claims and should be approved.   The schedule of the qualified clams is set forth in Exhibit A to this motion.   Accordingly, the Government now moves, pursuant to Paragraph 7 of the Order, for the release of the funds listed on Exhibit A to the respective Group F account holders.   A proposed order is supplied for the convenience of the court.

## C. Disqualified Claim

The Claims Administrator found one additional claim, comprising three accounts in the name of Pavlo Sergienko, that is not qualified for reimbursement from the VAP.   The accounts are described as follows:

| Account | Account Name | CPV/VAP | Dollar Value |
|---------|--------------|---------|--------------|
| 2203803 | PAVLO SERGIENKO | VAP | $94,725.08 |
| 4035138 | PAVLO SERGIENKO | VAP | $30,406.18 |
| 5291273 | PAVLO SERGIENKO | VAP | $4,056.38 |
| | | | $129,187.64 |

According to EGL, the balances in these accounts were derived from another account that EGL believes was used to operate a Ponzi scheme.   If so, the funds constitute criminal proceeds and should not have been included in the VAP group.

Paragraph 5 of the Order provides that in the event the Claims Administrator finds a claim to be disqualified, the court must determine a procedure for resolving the claim. The Government proposes that to avoid delaying the disbursement of the funds to the Group F claimants, and to allow all other aspects of this matter to be resolved as expeditiously as possible, including the payment of the outstanding penalty, the reimbursement of the Companies, and the entry of the Final Order of Forfeiture, the court adopt the following procedure:

After the Group F disbursements have been made, the U.S. Secret Service will transfer $129,187.64 from what would otherwise be left as part of the Residual Value to the Customs Suspense Account.   The Government would be required to give notice to Pavel Sergienko of his right to contest the forfeiture of the $129,187.64 pursuant to 18 U.S.C. § 981(a)(1)(C) and Supplemental Rule G of the Federal Rules of Civil Procedure just as all claimants were allowed to contest the forfeiture of the CPV Funds prior to the entry of the order of December 14, 2012 (ECF 85).   With the funds subject to the potential claim of Pavel Sergienko thus set aside, the court would proceed to resolve the remaining issues regarding the Residual Value without regard to how long it might take to resolve the Sergienko claim or what the outcome of that matter might be.

## IV.     The OFAC Countries and Other Miscellaneous Matters

### A.  The OFAC Countries

Throughout the CPV and VAP claims process, the Claims Administrator has been sending notice to the account holders in whatever country they may reside, with one important exception: Because federal law prohibits the disbursement of funds to certain countries designated by the Office of Foreign Asset Control (OFAC), the Claims

Administrator *did not* send notice to the holders 65,325 accounts held by persons in Iran,

Cuba, North Korea, Myanmar and Sudan.   These accounts total $1,114,650.57 in

value.   The vast majority are held by persons with Iranian addresses and contain less

than $5.00.   To allow this case to be resolved, and with no expectation that the OFAC

order regarding the listed countries will be lifted any time soon, the Government

proposes that the court order that the $ 1,114,650.57 be subtracted from the Residual

Value and transferred to the Registry of the Court, to remain there until such time as

OFAC determines what should become of those funds.

### B.  The Texas Banking Department

The Texas Banking Department assessed a penalty against EGL in the amount of

$135,525.00.   With accrued interest through April 30, 2014 (5 percent per annum), the

amount owed to the Texas Banking Department is $160,185.96**.**   The proposed order

provides that that amount be subtracted from the Residual Value and transferred to the

Texas Banking Department in accordance with the Order Appointing Claims

Administrator.

### C.  Reimbursement of EGL for VAP Expenses

As mentioned earlier, the Letter Agreement provides that before the Residual

Value is forfeited to the United States, the Government will remit to EGL sufficient funds

to reimburse it for any reasonable operating expenses incurred in respect to designing,

implementing and completing the VAP and participating in the related forfeiture

proceedings, and to satisfy any penalty or fine that remains outstanding.   (ECF 1 at 56).

The court has already approved the release of $2,962,873.21 to reimburse Gold

and Silver Reserve ("GSR") for the fine that GSR paid to OFAC in October 2011.   That

money was paid to GSR in December 2013.    GSR has advised that the Internal

Revenue Service and Florida Department of Revenue imposed penalties and interest

after the Letter Agreement was entered into.    GSR will be submitting documentation to

support payment from the Residual Value for these amounts pursuant to the Letter

Agreement, and the Government will review that request to determine if it falls within the

scope of the Agreement.

In addition, EGL is entitled to submit a request for the release of funds from the

Residual Value to reimburse EGL for any reasonable operating expenses that it incurred

in respect to designing, implementing and completing the VAP and participating in the

related forfeiture proceedings, including but not limited to, reasonable professional fees

and expenses.    The Secret Service, the United States Attorney's Office, and counsel for

the Companies have had preliminary discussions of what a reasonable amount of

reimbursement might be, but find that they are far apart. Further discussion will be

needed once the Companies provide documentation supporting their expenses.

Accordingly, to avoid delaying the distribution of all other funds and the winding up of the

Claims Administrator's role, the Government proposes that the sum of $5,000,000 from

the Residual Value be set aside in the Customs Suspense Account until such time as the

parties can agree on the amount of reimbursement, or the court determines the amount

that must be paid to the Companies pursuant to the Letter Agreement.    The escrowed

amount would also cover any payment needed to satisfy any penalty imposed on the

Companies by the IRS or the Florida Department of Revenue that is found to fall within

the scope of the Letter Agreement.

### D.  Small Amounts Remaining from the CPV Disbursement

As mentioned earlier, on December 14, 2012, the Court issued an Order releasing $12,287.20 of the CPV Funds to 22 claimants, and forfeiting the balance of the CPV Funds to the United States.   (ECF 85)   For whatever reason, the Claims Administrator was unable to locate some of the CPV claimants, or those claimants chose not to negotiate the checks that were sent to them.   As a result, $ 244.30 in unclaimed CPV Funds remains in the Government's control.   To resolve this case, the Government requests that the $244.30 be added to the Residual Value and forfeited to the United States.   Likewise, the Government requests that if any of the disbursements to any of the Group A through F claimants remain unclaimed or not cashed for more than 120 days after they are disbursed, that those funds be forfeited by default to the United States as part of the Residual Value without further order of the court.

### E.  CPV Accounts to be Paid to the District Attorney of New York

Included within the funds forfeited to the United States as part of the CPV Funds were four accounts held in the name of Vadim Vassilenko containing a total of $13,963.36 in monetized value.   The accounts are set forth in the following table.

| Account | Account Name | CPV/VAP | Dollar Value |
|---------|--------------|---------|--------------|
| 415814 | Vadim Vassilenko | CPV | $1,548.59 |
| 724486 | Vadim Vassilenko | CPV | $10,649.45 |
| 2000405 | Vadim Vassilenko | CPV | $224.68 |
| 2061582 | Vadim Vassilenko | CPV | $1,540.64 |
| | | | $13,963.36 |

Vassilenko did not file a claim to these accounts and accordingly the $13,963.36 was forfeited to the United States.   The Claims Administrator later learned, however, that the accounts in question had been forfeited to the State of New York as part of a judgment obtained by the District Attorney for New York County (DANY) against Western Express and Vadim Vassilenko.   Accordingly, the value in the accounts should have been paid to the DANY SAF Escrow Fund.

In this motion, the Government seeks the court's approval to disburse $13,963.36 of the Residual Value to the DANY SAF Escrow Fund to rectify this error.

## V.   Final Order of Forfeiture

The Order Appointing Claims Administrator provides that once all disbursements under the CPV and VAP have been made, and all obligations set forth in the Letter Agreement have been satisfied, the Residual Value will be forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).   The following chart illustrates how the dollar amount representing the monetized value of the E-Gold accounts has been applied to the CPV Funds, Groups A through F of the VAP, and the various categories set forth in Part IV of this motion.   The remaining funds constitute the Residual Value that is subject to forfeiture to the United States.

| | |
|---|---|
| Total Monetized Amount | 86,324,036.79 |
| Disbursements to CPV account holders | -12,287.20 |
| CPV Funds Forfeited to the U.S. on 12/14/12 | -10,871,358.80 |
| VAP Funds Disbursed to Group A | -11,055,846.85 |
| VAP Funds Disbursed to Group B | -1,527,885.21 |
| VAP Funds Disbursed to Group C | -2,214,173.20 |
| VAP Funds Disbursed to Group D | -3,383,567.56 |
| VAP Funds Disbursed to Group E | -1,765,841.09 |
| VAP Funds Disbursed to Group F | -295,642.60 |

| | |
|---|---|
| Funds in Disqualified Group F Account of Sergienko | -129,187.64 |
| Funds in Accounts in OFAC Countries | -1,114,650.57 |
| Funds Payable to Texas Banking Dept | -160,185.96 |
| Escrow of Reimbursement of EGL for VAP Expenses | -5,000,000.00 |
| DANY SAF Escrow Fund | -13,963.36 |
| Funds Paid to EGL as reimbm for OFAC Fine | -2,962,873.21 |
| Unclaimed CPV Funds | 244.30 |
| | |
| Residual Amount to be Forfeited to the U.S. | 45,816,817.84 |

In its Verified Complaint, the Government alleged that the monetized value of the E-Gold accounts, what the Complaint referred to as the E-Metal Account Value, was subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) "because the e-metal representing the value in each account prior to its conversion to currency was property involved in the operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960."   (ECF 1 at 3).   The Letter Agreement and the Order Appointing Claims Administrator provide that once the CPV Funds were forfeited to the United States, all funds claimed by qualified VAP account holders were distributed, and provisions were made for any remaining claims and amounts owed to EGL to be taken into account, EGL would not contest the forfeiture of the Residual Value and it would be forfeited to the United States pursuant to Section 981(a)(1)(A).

WHEREFORE, the Government requests that the court issue an order setting aside the amounts described above and giving clear title to the Residual Value to the

United States to dispose of in accordance with law.    A proposed order is provided for

the convenience of the court.

Respectfully submitted,

ROD J. ROSENSTEIN
United States Attorney


By:_____/s/_____
Stefan D. Cassella
Assistant United States Attorney